IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK BUTLER, : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | No. 16-4802 |
| : | |
| ALLSTATE FIRE & CASUALTY CO., : | |
| Defendant. : | |

MCHUGH, J.                                                                                          July 10, 2017

## MEMORANDUM

This case arises under Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa. Stat. and Cons. Stat. Ann. §1701, *et seq.* Under that law, insurers issuing automobile policies in Pennsylvania must offer uninsured and under-insured motorist (UM/UIM) coverage in amounts equal to bodily injury liability coverage. Consumers may elect to purchase UM/UIM coverage in lesser amounts, but the MVFRL requires that they do so in writing. The issue before me is whether Plaintiff Mark Butler's choice of reduced UM/UIM coverage was documented in a manner that complies with the requirements of the MVFRL. Cross-motions for summary judgment are pending. Because the legal requirements for reducing UM/UIM coverage are far less rigorous than the requirements for a complete waiver of coverage, Defendant Allstate's motion will be granted.

## I.     FACTUAL BACKGROUND

In February 2016, Butler was involved in an automobile accident with an uninsured motorist. At the time of his accident, Butler's Allstate policy provided bodily injury liability coverage of up to $100,000 per person and $300,000 per accident, and UM/UIM coverage of up

1

to $15,000 per person and $30,000 per accident. These limits, which applied to each of Butler's four vehicles, could also be stacked, entitling Butler to as much as $400,000/$1,200,000 in liability protection and $60,000/$120,000 in UM/UIM protection. Following Butler's accident, Allstate tendered a payout of $60,000, which Butler refused. Butler claims that his election of reduced UM/UIM coverage was invalid and that Allstate therefore owes him $400,000—a payout equal to the coverage limit on his bodily injury liability insurance.

This case arises out of the regulatory framework created by the MVFRL, which requires automobile insurers in Pennsylvania to (1) offer UM/UIM coverage and (2) do so in amounts equal to bodily injury liability coverage. §§ 1731, 1734. Importantly for this case, the MVFRL provides differing levels of protection for these two statutory rights. To be valid, a consumer's complete waiver of UM/UIM coverage must comply with the specific procedures set forth in § 1731, which prescribes the text that must appear on a waiver form, and explicitly requires that waivers of UM and UIM coverage be printed on separate forms. The technical requirements of § 1731 do not apply, however, to requests for reduced UM/UIM coverage. *Lewis v. Erie Ins. Exch.*, 568 Pa. 105, 125, 793 A.2d 143, 155 (2002). Rather, these requests are governed by § 1734, which simply requires that they be "in writing." If a waiver or request for reduced coverage is not made in accordance with the requirements of § 1731 or § 1734, respectively, courts will deem UM and UIM coverage limits to be equal to the policyholder's bodily injury liability coverage limits. *Nationwide Mut. Ins. Co. v. Heintz*, 804 A.2d 1209, 1216 n.7 (Pa. Super. Ct. 2002). Finally, to ensure that a consumer's decision to waive or reduce UM/UIM coverage is knowing, § 1791 requires insurers to provide their customers with an "Important Notice" explaining their rights under the MVFRL.

The parties disagree over whether Butler ever received the "Important Notice" mandated by § 1791. It is undisputed, however, that Butler and his wife Bernadette signed a two-page document, dated July 25, 2015, and titled "REQUEST FOR LOWER LIMITS OF COVERAGE FOR UNINSURED AND UNDERINSURED MOTORISTS INSURANCE." Def. MSJ Ex. G at 1. That document, which Allstate refers to as a "sign-down form," begins with the gist of the MVFRL: "If the first named insured has not rejected [UM/UIM] Insurance . . . [UM/UIM coverage] limits will be included in your policy at limits equal to your Bodily Injury Liability . . . limits unless the first named insured selects lower limits." *Id.* Later on the form's first page, below the words "I select the following limits for [UM/UIM] Insurance," boxes are marked with pre-printed "x's" indicating UM and UIM coverage amounts of $15,000/$30,000 for each of Butler's four vehicles. These marked boxes appear next to unmarked boxes corresponding to higher amounts of UM/UIM coverage. The signature line is on the second page of the form, but is not isolated on a page by itself, as the final sentence of the form's first page carries over to its second.

**II. STANDARD**

The standard for summary judgment under Fed. R. Civ. P. 56(a), as amplified by *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), is well-established. When confronted with cross-motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Schlegel v. Life Ins. Co. of N. Am.,* 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting Charles A. Wright et al., 10A *Federal Practice and Procedure* § 2720 (3d ed. 1998)).

## III. DISCUSSION

The central legal issue in this case is whether the sign-down form is enforceable under the MVFRL. Section 1734 of the MVFRL does not "dictate[] the particular language that the parties must utilize to accomplish a valid request for the reduction of uninsured and underinsured motorist coverage limits." *Hartford Ins. Co. v. O'Mara*, 907 A.2d 589, 603 (Pa. Super. Ct. 2006). To be enforceable, "the language utilized need only convey an insured's desire to purchase uninsured and underinsured coverage in amounts less than or equal to bodily injury limits[,] and the amount of the requested coverage." *Id*.

Butler argues that his signature on the sign-down form does not demonstrate his intent to purchase reduced UM/UIM coverage because the coverage amounts indicated on that form were pre-selected by Allstate. On the facts of this case, I find Butler's argument unpersuasive. Butler's signature appears on a form specifically designed for the election of reduced UM/UIM coverage.[1] That form was unambiguously titled "REQUEST FOR LOWER LIMITS OF COVERAGE" and began by explaining that, unless Butler "select[ed] lower limits," UM/UIM coverage "limits will be included in your policy at limits equal to your Bodily Injury Liability . . . limits." Finally, the pre-marked boxes on the form appeared below the text "I select the following limits" and were next to unmarked boxes corresponding to higher coverage limits. Taken together, the sign-down form's title, text, and structure make clear that (1) Butler was free to choose whether or not to purchase reduced UM/UIM coverage, (2) the pre-selected coverage

---

[1] Where courts have refused to enforce reduced UM/UIM coverage, the documents at issue have been insurance application forms, not specifically tailored sign-down forms focusing the attention of the purchaser. For instance, in *Motorists Insurance Companies v. Emig*, 664 A.2d 559, 564 (Pa. Super. Ct. 1995) the Pennsylvania Superior Court found that a signature at the end of an application did not satisfy § 1734 because a separate provision of the form, which referred specifically to reductions in UM/UIM insurance and had its own signature blank, was not signed. Similarly, in *Erie Insurance Exchange v. Larrimore*, 987 A.2d 732 (Pa. Super. Ct. 2009), the Superior Court refused to enforce a coverage reduction when the policyholder signed the application but did not sign the insurer's stand-alone sign-down form.

amounts were just one of several options available to him, and (3) he could request UM/UIM coverage in the pre-selected amounts by signing and returning the form to Allstate. Because the sign-down form's purpose and effect were clear, I find that Butler's signature was sufficient evidence of his intent to reduce his coverage. *See also Davis v. Allstate Prop. & Cas. Co.*, No. 13-CV-07038, 2014 WL 4857434 (E.D. Pa. Sept. 30, 2014) (finding that plaintiff's signature on a nearly identical Allstate sign-down form satisfied § 1734).

I would not go so far as to say that the pre-designation of coverage limits has no legal significance. The MVFRL is meant to confer options. Higher limits of UM/UIM coverage generally come at a modest premium, and the experience of practitioners who represent victims of automobile accidents suggests that insurance carriers do not encourage their agents to recommend increased limits for this type of coverage. Indeed, in this case it was not the agent who pre-marked the form with the minimum limits, but Allstate itself, which automatically generated the form. Pl. MSJ Ex. C at 71–72. It is impossible to tell from the record whether Allstate was attempting to steer Butler to lower limits as the default option, or was merely carrying through the limits from earlier policies.[2] On balance, however, because the other options were explicitly set forth, and because the language of the form was sufficiently clear, there is no basis on which to conclude that Butler's selection was illusory.

Butler has also advanced a subsidiary argument: that his selection of reduced UM/UIM coverage was not knowing—and therefore not enforceable—because Allstate never provided him and his wife the "Important Notice" of statutory rights required by § 1791. Allstate maintains that Butler received the § 1791 notice, but even accepting Butler's version of events, his argument is foreclosed by a series of Pennsylvania appellate opinions holding that an

---

[2] The Butlers had been Allstate customers since at least 1990 and had always carried UM/UIM coverage of $15,000/$30,000.

5

insurer's failure to abide by the notice requirements of § 1791 does not render unenforceable an otherwise valid waiver of benefits or a written request for reduced benefits. The Pennsylvania Supreme Court has not addressed this specific issue, but the Superior Court, in a thorough and scholarly opinion, has made a convincing case that the legislature did not intend to create a separate remedy for a violation of § 1791. *Heintz*, 804 A.2d 1209; *Kline v. Old Guard Ins. Co.*, 820 A.2d 783 (Pa. Super. Ct. 2003) (same); *see also Allstate Ins. Co. v. DeMichele*, 888 A.2d 834 (Pa. Super. Ct. 2005) (finding summary judgment in insurer's favor proper despite factual dispute regarding the provision of a § 1791 notice). Butler makes no attempt to address these decisions and my review of the case law uncovers no countervailing authority that would support the position he advances.

Accordingly, Allstate's Motion for Summary Judgment will be granted and Butler's denied. An appropriate Order follows.

　　　　　　　　　　　　　　　　　　　　　　　　/s/ Gerald Austin McHugh
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge